IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2008 DUCATI MOTORCYCLE,

    Defendant.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

    The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

### JURISDICTION AND VENUE

    1.    The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property based upon violations of 21 U.S.C. § 801 et seq. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

    2.    Venue is proper under 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, as the defendant property is located, and most of the acts described herein, occurred in the District of Colorado.

## DEFENDANT PROPERTY

3.     Defendant property is more fully described as:

2008 Ducati motorcycle, VIN ZDM1YACP18B005143 (defendant "Ducati") seized from Taylor Hills on May 7, 2012, currently held by Customs and Border Protection (CBP). Defendant Ducati is registered in the name of Taylor Hills, and was purchased on June 26, 2011.  Defendant Ducati is believed to be unencumbered.

## FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

4.     Since October 2011, officers have been investigating a MDMA and marijuana distribution organization run by Taylor Hills (Hills).  In late October 2011, a Source of Information told investigators that MDMA and other drugs were being sold at a residence, located at 1910 Norwood Avenue, Boulder, Colorado.  Hills resided at this residence, along with others.  Officers collected trash from the residence, which contained two baggies with residue inside.  The first baggie contained residue that tested presumptively positive for MDMA and the second baggie tested presumptively positive for marijuana.

5.     On November 11, 2011, a Boulder officer acting in an undercover capacity made arrangements to purchase one gram of MDMA at 1910 Norwood Avenue, Boulder, Colorado, from an associate of Hills.  The undercover officer received a baggie containing 1.3 grams of MDMA in exchange for $100.00 in pre-recorded U.S. currency.

## Interviews with Hills' Associates

6. On December 7, 2011, United States Postal Inspectors intercepted a package being sent to Boulder, Colorado from Madison, Wisconsin. The package was addressed to an individual, who later became a Confidential Informant (CI #1). The package contained $2,980.00 in United States currency. Officer conducted a controlled delivery of the package containing the currency and interviewed the recipient (CI #1). CI #1 said that he/she was receiving the package for Hills, and also told Inspectors that Hills had told him/her that he ships marijuana to people out of state and that he wanted CI #1 to accept packages for him containing U.S. currency, which was payment for the marijuana he ships. CI #1 has received multiple packages on multiple occasions and has given them to Hills. CI #1 indicated that he/she contacts Hills on his cell phone to set-up delivery to Hills of the packages containing currency. After speaking with Inspectors, CI #1 called Hills and delivered the package of $2,980.00 in United States currency to Hills.

7. Another Confidential Informant (CI #2) told officers that he/she had purchased five ounces of MDMA from Hills in February, 2012, and that Hills had "fronted" him/her the MDMA, for which CI #2 still owed Hills $4,500.00. Officers arranged for CI #2 to pay $3,500.00 in pre-recorded funds to Hills toward the debt, and to purchase an additional half-ounce of MDMA. CI #2 met with Hills at his residence located at 1910 Norwood Avenue, and gave Hills the $3,500.00 to be applied toward the debt, and an additional $450.00 in pre-recorded funds to purchase a half-ounce of MDMA. Hills gave the CI #2 a plastic baggie containing the MDMA.

8.      At this point, CI #2 still owed Hills $1,000.00.  Arrangements were made for CI #2 to again meet with Hills and give him $500.00 in pre-recorded funds to be applied to the debt for the previous MDMA "fronted."  Hills told CI #2 that there would not be any more MDMA available after this weekend, but that there should be more available next week.

9.      Another cooperating source told agents that an individual named Anthony Snowden (Snowden) receives MDMA from Canada and that Snowden pays $15,000.00 per kilogram of MDMA.  According to the cooperating source, Hills pays Snowden approximately $20,000.00 to $25,000.00 per kilogram of MDMA.  The cooperating source indicated that Hills has never had a job and does not have a trust fund.  The cooperating source went on to say that Hills had purchased defendant Ducati with cash proceeds from selling dope.   In addition to MDMA, Hills purchased twenty-five pounds of marijuana from Adam Purcell in San Diego for $40,000.00, according to the cooperating source.

10.     Kirk Celko, who purchases MDMA from Hills, was also interviewed and told agents that he met Hills over a year ago.  Celko recalls asking Hills for three ounces of MDMA and Hills gave him eight ounces on the spot.  Hills told Celko that he could get kilos of MDMA.  Celko admitted that, since July 2011, he has purchased MDMA from Hills approximately eight to ten times.  According to Celko, Hills told him that he had one pound of "Molly" (MDMA) and had sold it in seven days.  Hills also said that the "Molly" came into the United States at Vancouver, Canada, then on to San Diego, California.  Celko also said that he saw Hills spending a lot of money on a motorcycle and vehicles.

11. The extensive investigation, including Court-authorized interception of telephone calls made by Hills, surveillance, and interviews revealed that Hills was distributing large quantities of MDMA and marijuana throughout the United States, using the postal service and private shipment companies such as Federal Express. In addition, the investigation revealed that Anthony Snowden was Hills source of supply of MDMA.

### Snowden Interview

12. Snowden was interviewed and told officers that he was introduced to Hills by Adam Purcell about a year and a half ago. Snowden said that while at a rave, Hills asked him for a large amount (half-kilo and kilos) of MDMA. Snowden indicated he gets the MDMA from a source of supply in Los Angeles, California. Snowden indicated that the MDMA came from Canada, to San Francisco, California, and then on to Los Angeles, California.

13. According to Snowden, Hills would come to San Diego approximately every two months for more MDMA. Snowden would purchase one kilogram of MDMA for $17,000.00 and then sell it to Hills for $18,000.00 or $19,000.00. Hills would pay Snowden in cash, consisting of $100 bills.

14. Agents observed, and Snowden confirmed, that Hills was in San Diego between April 30, 2012 to May 1, 2012, when Snowden and Gabriel Driscoll picked up seven kilos of MDMA from Snowden's source of MDMA. According to Snowden, the $40-$50,000.00 in cash used to pay his source for the seven kilos of MDMA came from Adam Purcell and Hills. Hills received one of the kilos of MDMA, which he shipped to

Colorado. Two kilos of MDMA were for Snowden, one kilo was for Gabriel Driscoll, two kilos were for Adam Purcell, with the remaining kilo to be left with Snowden for Hills to pick up at a later date. On May 1, 2012, law enforcement conducted a traffic stop on the vehicle driven by Gabriel Driscoll and seized the remaining six kilograms of MDMA, along with $10,000.00 in United States currency.

15. Snowden also indicated that Hills, while in San Diego purchasing MDMA, would also purchase marijuana from Adam Purcell.

16. Snowden stated that Hills had gone to Portland, Oregon in late March of 2012, so that Hills could be introduced to Snowden's acquaintance who sold marijuana. Hills had been purchasing marijuana from Adam Purcell and told Snowden that going to Adam Purcell's house to buy marijuana is "crazy," dealing with a bunch of gangsters, who had guns. Snowden stated that he and Hills went to Portland, Oregon, where Snowden introduced Hills to a friend in the marijuana dispensary business. Snowden saw Hills bringing shipping boxes into the hotel they were staying. Also, while in Portland, Snowden received $19,000.00 from Hills for one kilo of MDMA that Snowden had received from his MDMA source. In addition, law enforcement observed Hills take a box into a FedEx store, staying only 10-15 minutes, and then leaving without the box. The box being shipped by Hills contained a significant amount of packaged marijuana.

17. According to Snowden, Hills left Portland quickly and wanted Snowden to have his mother, Diane Snowden, mail the MDMA to him. Snowden admitted that he gave one kilo of MDMA to his mom to send to Hills. On April 11, 2012, Postal Inspectors seized this package and it contained 2.2 pounds of MDMA.

18.     Snowden indicated that he had no knowledge of Hills having legitimate employment, and knew of no actual business venture in which Hills was involved. Snowden further indicated that he was are that Hills had spent his drug proceeds on a car and motorcycle.

19.     Snowden admitted that, over a two-year span, he had sold "at least 10 kilos" of MDMA to Hills.

<u>April 2012 Interception</u>

20.     During one specific intercepted call on April 11, 2012, Hills was heard talking about a package that was to be delivered to Burlington, Vermont. Hills expressed concern that the package had been mistakenly opened by an employee of the hotel and had been turned over to the police. Law enforcement officers confirmed with the Burlington, Vermont Police Department that a package containing 11.0071 pounds of marijuana had been seized. The officers confirmed that the package had been delivered to the Hilton Hotel, and had been opened by an employee, who then turned the package over to the police upon discovering that it contained marijuana.

<u>Search Warrants</u>

21.     On May 7, 2012, law enforcement personnel executed a Colorado State Search Warrant at 1910 Norwood Avenue, Boulder, Colorado. Hills had recently resided at this location before moving to a condominium located at 2226 Pearl Street, Boulder, Colorado. Officers seized from 1910 Norwood Avenue, approximately 1.6 pounds of marijuana. On the same day, law enforcement personnel executed a Colorado State Search Warrant at 2226 Pearl Street, Boulder, Colorado, the new residence of Taylor

Hills, and found approximately 7 grams of MDMA in clothing just outside Hills' bedroom.

22.	On May 8, 2012, Hills was charged in Colorado District Court Case No. 2012CR810 with Controlled Substances Conspiracy, Possession With Intent to Distribute Controlled Substances, and Racketeering.   The case is currently pending.

23.	A check of records of the Colorado Department of Labor and Employment revealed no legitimate wage earnings for Hills.

<u>VERIFICATION OF KELLY HERNANDEZ, SPECIAL AGENT</u>
<u>HOMELAND SECURITY INVESTIGATIONS</u>

I, Special Agent, Kelly Hernandez, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

s/ <i>Kelly Hernandez</i><br>Kelly Hernandez

STATE OF COLORADO      )
CITY AND               ) ss
COUNTY OF DENVER       )

The foregoing was acknowledged before me this 8th day of November, 2012 by Kelly Hernandez.

s/ <i>Pamela s. Jebens</i><br>Notary Public – Colorado

My Commission Expires: 3-19-2016

## FIRST CLAIM FOR RELIEF

24. The Plaintiff repeats and incorporates by reference the paragraphs above.

25. By the foregoing and other acts, defendant Ducati constitutes proceeds traceable to an exchange for controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 9th day of November, 2012.

    Respectfully submitted,

    JOHN F. WALSH
    United States Attorney

By: s/ *Tonya S. Andrews*
    Tonya S. Andrews
    Assistant United States Attorney
    1225 Seventeenth Street, Ste. 700
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    E-mail: tonya.andrews@usdoj.gov
    *Attorney for Plaintiff*